IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN L. ELIAS, | ) |
| | ) |
| Plaintiff, | ) Case No. 09 C 6773 |
| v. | ) |
| | ) Judge Virginia M. Kendall |
| STEWART TITLE OF ILLINOIS, NATIONAL CITY BANK, NATIONAL CITY MORTGAGE, NATIONAL LENDING CORPORATION, NATIONAL LENDING CORPORATION OF ILLINOIS, TRACEE YOUNG, CHRISTINA ZIABARAS, E*TRADE FINANCIAL CORPORATION, FEDERAL NATIONAL MORTGAGE ASSOCIATION, GREEN TREE SERVICING LLC, AND DOES 1 TO 100, | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff John Elias ("Elias") filed suit against Stewart Title of Illinois ("Stewart"), National City Bank ("NCB"), National City Mortgage ("NCM"), National Lending Corporation ("NLC"), National Lending Corporation of Illinois ("NLCIL"), Tracee Young ("Young"), Christina Ziabaras ("Ziabaras"), E*Trade Financial Corporation, Federal National Mortgage Association ("FNMA"), Green Tree Servicing LLC, and other unnamed defendants (collectively "Defendants") under the Truth in Lending Act, 15 U.S.C. 1601 *et seq*. ("TILA") (Count I), the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ICLS 505/1 *et seq*. ("ICFA") (Count II), common law fraud (Count III), notary fraud (Count IV), civil conspiracy (Count V), and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. 1961, *et seq*. ("RICO") (Count VI). PNC Bank ("PNC") is the successor to NCB and NCM. Count I was voluntarily dismissed with regards to Stewart but not

with regards to any other defendant. Stewart and PNC separately move to dismiss Counts II, III, IV, V, and VI of Elias' Amended Complaint. For the following reasons, Stewart's Motion to Dismiss is granted. PNC's Motion to Dismiss is granted in part and denied in part. PNC's motion is granted regarding Counts I, II, III, IV, and VI. PNC's motion is granted regarding Count V for all claims except that of civil conspiracy to commit a violation of TILA, for which it is denied.

## STATEMENT OF FACTS

The following facts are taken from Elias' Amended Complaint and are assumed to be true for purposes of this Motion to Dismiss. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995).

Stewart is a provider of title insurance and related real estate closing services in Illinois. NLC and NLCIL, both defunct corporations, were the mortgage broker and agent, respectively, of NCB and NCM. (Compl. ¶ 3.) NCB and NCM are now known as PNC. (Compl. ¶ 4.)

Elias sought to refinance and take a home equity line of credit on his home in Chicago in October 2006. (Compl. ¶¶ 19, 20.) Elias negotiated the refinancing and line of credit with Ziabaras, an employee and mortgage broker of NLC and NLCIL. (Compl. ¶ 21.) On Friday, October 20, 2006, Ziabaras met with Elias in Elias' office to sign forms authorizing the refinancing and the line of credit. (Compl. ¶ 23.) Elias was unhappy with the terms of the loans and did not sign the papers. (Compl. ¶ 24.) Elias changed his mind that weekend and decided he would sign and accept the terms of the loans. (Compl. ¶ 25.)

On Tuesday, October 24, 2006, Ziabaras went to Elias' house and he signed but did not date the loan documents. (Compl. ¶ 26.) Pursuant to TILA, borrowers are given three days to rescind their loans without penalty. (Compl. ¶¶ 29, 30.) The three day right of recision gave Elias until October 27, 2006 to rescind the loans he negotiated with Ziabaras. (Compl. ¶ 29.) However, both

of Elias' loans were funded on Wednesday October 25, 2006. (Compl. ¶ 28.) NCM funded Elias with $289,768.49 for the refinancing and charged settlement fees of $2,496.35. (Compl. ¶ 32.) NCB funded Elias with $20,000 for his home equity line of credit and charged settlement fees of $419. (Compl. ¶ 33.)

The premature funding of the loans violated Elias' three-day right to rescind the loans under TILA. (Compl. ¶ 29.) Elias attempted to utilize another lender, but did not because his loans had already been funded by NCB. (Compl. ¶ 30.) Elias noticed that his refinancing and his home equity loan documents were both backdated and notarized as of Friday, October 20, 2006 even though he did not actually sign them until Tuesday, October 24, 2006. (Compl. ¶ 27.) Elias informed Defendants of his wish to rescind and that he was willing and able to tender the borrowed funds back to Defendants.[1] (Compl. ¶¶ 39, 40.)

Elias filed his Original Complaint on October 27, 2009. Stewart filed a Motion to Dismiss on February 20, 2010. Elias filed an Amended Complaint on May 3, 2010 and voluntarily dismissed Count I of the Amended Complaint with regards to Stewart on May 10, 2010. PNC filed a Motion to Dismiss Counts II-VI on May 27, 2010. PNC also filed a cross claim against NLC for breach of contract and express indemnity on May 27, 2010 regarding Count I.

**STANDARD OF REVIEW**

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all facts alleged in the complaint and construes all reasonable inferences in favor of the plaintiff. *See Murphy*, 51 F.3d at 717. To state a claim upon which relief can be granted, a complaint must contain

---

[1] Elias does not specify when he informed Defendants of his wish to rescind, when he became aware of the alleged back-dating, or when he attempted to utilize another lender.

a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In analyzing whether a complaint has met this standard, the "reviewing court [must] draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines if they plausibly give rise to an entitlement to relief. *Id.* A claim has facial plausibility when the pleaded factual content allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See id.* at 1949.

Rule 9 provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Red. R. Civ. P. 9. This heightened pleading requirement was intended to protect against the "great harm to the reputation of a business of a firm or other enterprise a fraud claim can do." *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). To satisfy the requirements of Rule 9, a plaintiff must set forth "the who, what, when, where, and how" of the alleged fraud. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

## DISCUSSION

Stewart and PNC individually move to dismiss Counts II-VI of Elias' Amended Complaint.

## I. Illinois Consumer Fraud Act

### A. Statute of Limitations

Stewart and PNC move to dismiss Elias' ICFA claim as time-barred. Actions under the

ICFA "shall be forever barred unless commenced within 3 years after the cause of action accrued." 815 ILCS 505/10a(e). Under the Illinois "discovery rule," causes of action accrue when the plaintiff is "possessed of sufficient information concerning its injury to put a reasonable person on inquiry to determine whether actionable conduct was involved." *Vector-Springfield Props., Ltd. v. Cent. Ill. Light Co., Inc.*, 108 F.3d 806, 809 (7th Cir. 1999). A plaintiff can plead himself out of court if he alleges facts that affirmatively show that his suit is time-barred, but a plaintiff need not negate an affirmative defense, such as the statute of limitations, in his complaint. *See Clark v. City of Braidwood*, 318 F.3d 764, 767 (7th Cir. 2003).

Here, Elias claims that he signed the loan documents totaling $309,768.49 on October 24, 2006 and that his loans were funded in that amount on October 25, 2006. Elias claims the premature funding injured him because it prevented him from obtaining a mortgage on more favorable terms from another lender. Stewart and PNC argue that Elias' cause of action accrued on the day he signed the loan documents. In the alternative, PNC argues Elias' cause of action accrued on the day the loans were funded.

The signing of the loan documents on October 24, 2006 did not put Elias on notice of his injury because he was not aware of any back-dating at that time and he reasonably assumed the loans would not be funded until October 27, 2006. *See, e.g., Tammerello v. Ameriquest Mortgage Co.*, 05-CV-0466, 2006 WL 2860936 (N.D. Ill. Sept. 29, 2006) (Coar, J.) (ICFA cause of action accrues at signing where the "crux" of complaint—an interest rate discrepancy—was easily ascertainable at that time). Moreover, there is no evidence that Elias, or a reasonable person in his situation, would be aware that his loans were funded before October 27, 2006. Therefore, under the "discovery rule," it is possible Elias' cause of action did not accrue until he attempted to rescind his loans on October

27, 2006, and realized they had been prematurely funded.[2] *See Clark*, 318 F.3d 764 at 768 (at the motion to dismiss stage, "the question is only whether there is *any* set of facts that if proven would establish a defense to the statute of limitations") (emphasis in original). Elias' three-year statute of limitations thus expired on October 27, 2009, the day he brought this suit, rendering it timely-filed.

**B. ICFA**

Neither Stewart nor PNC addresses the merits of Elias' ICFA claim in their Motions to Dismiss. In order to prevail on a claim under the ICFA, a plaintiff must prove that: (1) the defendant undertook a deceptive act or practice; (2) the defendant intended that the plaintiff rely on the deception; (3) the deception occurred in the course of trade and commerce; (4) actual damage to the plaintiff occurred; and (5) the damage complained of was proximately caused by the deception. *See Davis v. G.N. Mortgage Corp.*, 396 F.3d 869, 883 (7th Cir. 2005). A complaint made pursuant to the ICFA "must be pled with the same specificity as that required under common law fraud." *Elson v. State Farm Fire and Cas. Co.*, 691 N.E.2d 807, 817 (Ill. App. Ct. 1998).

While the elements a plaintiff must prove under the ICFA differ slightly from those a plaintiff must prove under common law fraud, *see Davis*, 396 F.3d at 883 (plaintiffs under ICFA, unlike common law fraud, need not show actual reliance), the element of damages must be pled with specificity under both causes of action. *See, e.g.*, *Elson*, 691 N.E.2d at 816. As discussed in Section II(A), *infra*, Elias is unable to demonstrate damages under the heightened pleading standard of Rule

---

[2] Elias does not cite to any caselaw to support the proposition that a cause of action under the ICFA generally accrues at the end of the three-day right to rescind. Elias' reliance on *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 118 S. Ct. 1408 (1998) is unavailing. In *Beach*, the Supreme Court held that TILA did not permit a federal right to rescind, defensively or otherwise, after the three-year period has run. *Beach*, 523 U.S. at 419. Moreover, *Beach* made clear that a borrower may not assert a "right to rescind as an affirmative defense in a collection action brought by the lender more than three years after the consummation of the transaction." *Id.* at 411-12. Nonetheless, taking Elias' statements as true, it is possible he was not aware of the back-dating or the funding of his loans before October 27, 2006.

9(b) and therefore does not adequately plead a claim under the ICFA either. Stewart's and PNC's Motions to Dismiss are thus granted as to Count I.

## II. Common Law Fraud

Stewart and PNC move to dismiss Count III of Elias' Amended Complaint, alleging violations of common law fraud, for failure to plead sufficient facts under Rule 9(b) and failure to name the appropriate defendants. In order to prevail on a claim for common law fraud in Illinois, a plaintiff must prove: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damage resulting from reliance on the statement. *See, e.g.*, *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 591 (Ill. 1996). A plaintiff must plead these claims with particularity and specify the "who, what, when, where, and how" of the fraud in his complaint. *Borsellino*, 477 F.3d at 507 (quotations and citations omitted). Allegations made "upon information and belief" are generally insufficient unless the plaintiff "states the grounds for his suspicions." *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 924 (7th Cir. 1992). Formulaic recitations of the cause of action do not put defendants on notice and do not meet the heightened pleading standard. *See Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009). Moreover, "[a]ttributing allegations to defendants as a single group is generally insufficient to meet the heightened pleading standard of Rule 9(b)." *Whitley v. Taylor Bean & Whitacker Mortgage Corp.*, 607 F. Supp. 2d 885, 898 (N.D. Ill. 2009) (Castillo, J.).

Here, Elias claims that Defendants, through Ziabaras, instructed him not to date the loan documents; that Ziabaras, an employee of NLC and NLCIL, knew that instruction was false and intended to induce Elias to act; that Elias relied on Ziabaras' statement; that Defendants, upon

7

information and belief, instructed him not to date the documents so they could backdate them in an attempt to "wipe out" his three-day right to rescind. (Compl. ¶¶ 68, 70-72, 74.) Elias claims to have suffered damages from an inability to seek more favorable loans from other lenders, and from the expenses he paid to defendants, including those for transaction fees, interest, closing costs, servicing fees, and notary fees. (Compl. ¶ 75.)

While Elias verges on a formulaic recitation of his cause of action, he nonetheless establishes several of the heightened pleading elements. Elias explicitly names Ziabaras and describes her knowingly false instruction not to date the loan agreements. Elias claims the fraud occurred on October 24, 2006, at his home, when he was induced to sign the loan documents but not date them. Elias alleges upon information and belief that Ziabaras and PNC engaged in this conduct to prevent him from later rescinding his loans, which is an adequate ground of suspicion.

### A. Damages

Elias, however, fails to specify the "particular information that Rule 9 requires" regarding his damages incurred by being unable to rescind his loans. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 406 (7th Cir. 2010) ("a plaintiff must plead actual damages arising from her reliance on a fraudulent statement"). Elias gives no indication that the other lenders would not have charged him transaction fees, interest, closing costs, servicing fees, or notary fees. Moreover, Elias does not explicitly state the loss he incurred by accepting the NCL and NCIL loans as opposed to the loans allegedly offered by the other lenders. This loss information is within Elias' control, not the control of Defendants. *See, e.g.*, *AEL Fin. LLC v. Tri-City Auto Salvage, Inc.*, 08-CV-4384, 2009 WL 3011211 at *6 (N.D. Ill. 2009) (Dow, J.) (heightened pleading standard in Rule 9(b) may be relaxed when information is peculiarly within the control of the moving party).

In addition, Elias alleges Count III against "all Defendants" but he only explicitly names Ziabaras as the perpetrator of the fraud. As such, the fraud claim is improperly against PNC and Stewart because Ziabaras is not a party to these Motions to Dismiss. *See, e.g., Whitley* 607 F. Supp. 2d at 898 (where fraud was alleged against all defendants but only explicitly named three of them, fraud counts only apply to the explicitly listed defendants).

Elias has not pled common law fraud against Stewart or PNC with the appropriate specificity required under Rule 9(b). Therefore, Stewart's and PNC's Motions to Dismiss are granted as to Count III.

### III. Notary Fraud

Stewart and PNC move to dismiss Count IV of Elias' Amended Complaint, alleging notary fraud, for failure to plead sufficient facts pursuant to Rule 9(b) and failure to name the appropriate defendants. In order to prevail on a claim of notary fraud in Illinois, a plaintiff must prove the same elements as those needed to prove common law fraud. *See* Section II(A), *supra*; *Borsellino*, 477 F.3d at 507 (in all averments of fraud, the circumstances constituting fraud shall be stated with particularity). Here, Elias alleges that all Defendants committed notary fraud but he only explicitly names Young, a notary. Elias claims that he never met Young, but that she forged the dates on his loan documents and backdated them to October 20, 2006. (Compl. ¶¶ 77, 78.) Elias claims that Young is an employee of Stewart and that NCL and Stewart knew about and condoned the forgery in order to interfere with his right to rescind. (Compl. ¶¶ 80, 81.) Elias claims damages due to his loans being prematurely funded. (Compl. ¶ 79.)

Elias' notary fraud claim is less comprehensively pled than his common law fraud claim. Therefore, his notary fraud claim does not meet the heightened pleading standard set forth in Rule

9(b), particularly with regards to the damages he incurred. Moreover, Elias does not provide any facts or evidence in support of his claim that Stewart and NLC knew about the alleged forgery. While Young may have been acting within the scope of her employment duties when she dated the loans, Elias' reliance on the doctrine of respondeat superior does not create liability for Stewart because he has not adequately demonstrated that Young committed fraud. *See, e.g., Willfong v. Dean Evans Co.*, 679 N.E.2d 1252, 1255 (Ill. App. Ct. 1997) (no liability on part of principal under respondeat superior unless agent is also liable). Stewart and PNC's Motions to Dismiss are thus granted as to Count IV.

**IV. Civil Conspiracy**

Stewart and PNC move to dismiss Count V of Elias' Amended Complaint, alleging civil conspiracy. To state a claim for civil conspiracy under Illinois law, a plaintiff must allege facts establishing both: (1) an agreement between two or more persons to accomplish, by concerted action, either an unlawful purpose or a lawful purpose by unlawful means; and (2) an act committed in furtherance of that agreement. *See, e.g.*, *Reuter v. MasterCard Int'l, Inc.*, 921 N.E.2d 1205, 1216 (Ill. App. Ct. 2010). In addition, the plaintiff "must allege an injury caused by the defendant." *See Id*. There can be no civil conspiracy between a corporation's own officers or employees nor between a corporation and its agents. *See, e.g.*, *Buckner v. Atl. Plant Maint., Inc.*, 694 N.E.2d 565, 571 (Ill. 1998) (there can be no conspiracy between principal and agent). Although civil conspiracy claims are not by definition fraudulent torts, "a claim that 'sounds in fraud'—one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements." *Borsellino*, 477 F.3d at 507 (Rule 9(b) applies to averments of fraud, not claims of fraud); *see also Castillo v. First City Bancorporation of Tex., Inc.*, 43 F.3d 953, 961 (5th Cir. 1994) (claim of civil

conspiracy to commit fraud falls under Rule 9(b)). Thus, this Court must examine the plaintiff's factual allegations to determine whether Rule 9(b)'s heightened pleading standard applies. *Borsellino*, 477 F.3d at 507; *see, e.g.*, *Martinez v. Freedom Mortgage Team, Inc.*, 527 F. Supp. 2d 827, 839 (N.D. Ill. 2007) (Shadur, J.) (Rule 9(b)'s heightened specificity requirement applies whenever a claim is premised upon a course of fraudulent conduct, including claims of conspiracy to commit fraud).

Here, Elias claims Defendants combined with malice to commit the underlying acts violating TILA, ICFA, common law fraud, and notary fraud. (Compl. ¶ 83.) Elias further claims, "upon information and belief," that all Defendants caused "severe economic injury" to him. (Compl. ¶ 84.) Because Elias dismissed his TILA claim against Stewart, and because PNC is not challenging his TILA claim in its Motion to Dismiss, Elias' civil conspiracy claim regarding an alleged TILA violation will not be reviewed by this Court at this time.

Elias' remaining claims regarding conspiracy to violate ICFA, common law fraud, and notary fraud all "sound in fraud" and are thus all subject to Rule 9(b)'s heightened pleading standard.[3] *See* Sections I, II, III, *supra*. As such, one of the elements Elias must plead with particularity is his claim of damages. Elias' statement, that "upon information and belief" he suffered severe economic injury is not adequate to meet Rule 9(b)'s heightened pleading standard. *See Swanson*, 614 F.3d at 406 ("a plaintiff must plead actual damages arising from her reliance on a fraudulent statement").

Therefore, Elias' civil conspiracy claims regarding violations of ICFA, common law fraud, and notary fraud cannot withstand Stewart's and PNC's Motions to Dismiss. Elias' civil conspiracy claim regarding an alleged violation of TILA is not properly before the Court at this time. Stewart's

---

[3] Stewart incorrectly asserts Elias can only maintain a civil conspiracy claim if he alleges a violation of TILA.

Motion to Dismiss is granted regarding Count V. PNC's Motion to Dismiss is granted regarding Count V's claims regarding ICFA, common law fraud, and notary fraud. PNC's Motion to Dismiss is denied regarding civil conspiracy to commit a violation of TILA.

**V. RICO**

Stewart and PNC move to dismiss Count VI of Elias' Amended Complaint, alleging violations of RICO. RICO is a "unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006). "While a dismissal of a RICO claim is appropriate if the plaintiff fails to allege sufficient facts to state a claim that is plausible on its face, the adequate number of facts varies depending on the complexity of the case." *Kaye v. D'Amato*, 357 Fed. App'x 706, 710 (7th Cir. 2009). Allegations of fraud in a civil RICO claim are subject to the heightened pleading standard set forth in Rule 9(b). *See id*. A RICO plaintiff must prove four elements: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity. *See Gamboa*, 457 F.3d at 705.

A "pattern of racketeering activity" requires at least two predicate acts within a ten-year period. *See* 18 U.S.C. § 1961(5). Establishing a pattern also requires a showing that the racketeering predicates are related and amount to or pose a threat of continued criminal activity. *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (Section 1961(5) implies that two acts may not be sufficient to establish a RICO pattern); *Gamboa*, 475 F.3d at 706 (isolated instances of criminal behavior, not presenting at least some threat of future harm, cannot meet § 1962(c)'s continuity element); *Pizzo v. Bekin Van Lines Co.*, 258 F.3d 629, 633 (7th Cir. 2001) (continuity demonstrated by a company that "habitually" uses its store "as an engine of fraud").

Here, Elias again verges on a formulaic recitation of his cause of action. He claims that

Defendants engaged in a pattern of racketeering activity from which they derived income and conspired to violate §§ 1962(a), (b), or (c). (Compl. ¶¶ 86, 87, 90.) Elias claims that the Defendants are each enterprises for the purposes of RICO, and that they committed two predicate acts by instructing him not to date his loan documents on October 24, 2006 and by prematurely funding his loans on October 25, 2006. (Compl. ¶¶ 91, 92.)

### A. Pattern of Racketeering Activity

Assuming that Elias is correct in his description of the enterprises and predicate acts involved, Elias must still demonstrate a "pattern of racketeering activity" and a failure to do so is fatal to Elias' claim. Because the inducement to leave the loan documents undated and the subsequent premature funding of the loans are related, Elias must demonstrate that these predicate acts "amount to or pose a threat of continued criminal activity." *H.J.*, 492 U.S. at 239. Continuity can be "close-ended" or an "open-ended." Close-ended continuity "refers to a closed period of repeated conduct" while open-ended continuity refers to "past conduct that by its very nature projects into the future with a threat of future repetition." *Id.* at 241. "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy" the requirement of close-ended continuity. *Id.* Moreover, while a minimum of two acts are required, two acts are usually insufficient. *Id.* at 238-39.

Elias has not satisfied the elements of close-ended continuity because he has only sufficiently pled two predicate acts, on October 24, 2006 and October 25, 2006, the duration between which was one day apart. *See H.J.*, 492 U.S. at 242 (a few weeks or months between predicate acts is insubstantial and does not satisfy the continuity requirement); *Kaye*, 357 Fed. App'x at 716 (finding two predicate acts seven months apart to be insufficient); *Pizzo*, 258 F.3d at 633 (two disputes five

months apart does not satisfy continuity requirement); *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1024 (7th Cir. 1992) (a pattern that lasted only three to four months was insufficient). Nor has Elias satisfied the elements of open-ended continuity because he has not demonstrated that there is a danger of the predicate acts recurring or that leaving loan documents undated was the "regular way" that NCB or NCM conducted business. *See H.J.*, 492 U.S. at 250 (threat of continuing activity may be established by showing alleged bribes were a "regular way" of conducting business or a regular way of participating in the conduct of the alleged and ongoing RICO enterprise).

Because Elias cannot demonstrate the continuity element necessary to prove a "pattern of racketeering activity," he cannot adequately support his RICO claim. As such, Stewart's and PNC's Motions to Dismiss are granted regarding Count VI.

## VI. Conclusion

For the reasons stated, Stewart's Motion to Dismiss is granted. PNC's Motion to Dismiss is granted regarding Counts II, III, IV, and VI. PNC's Motion to Dismiss is granted regarding Count V for all civil conspiracy claims except those alleging a violation of TILA, for which it is denied as not properly before the Court at this time.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: November 1, 2010